FOSTER JOHNSON v. JOHN ELDRIDGE.

1. PATENTS, PRESUMPTION IN FAVOR OF.—While a prior valid and subsisting location and survey will prevail over a subsequent location and patent, yet the patent carries with it a *prima-facie* right to the land thereby granted by the State to the patentee.
2. SAME.—To rebut such presumption, it devolves upon the adverse claimant to clearly establish a prior or superior equitable right. If both parties have equities, unless there is a decided preponderance the legal title must obtain.
3. SURVEYS—ABANDONMENT OF LOCATION.—It is the clear intendment of the act of November 29, 1871, (Paschal's Dig., 7096,) that no certificate which had been theretofore returned to the General Land Office should be withdrawn from the office, unless it had not been fully located, without an abandonment of the location and survey previously made upon it.
4. WITHDRAWAL OF CERTIFICATE FORFEITS SURVEY.—A withdrawal of a land certificate by the holder, from the General Land Office, is an abandonment of a location and survey previously made under such certificate.
5. RELOCATION.—A relocation of such certificate upon the same land is a new appropriation, and is subject to all adverse rights in the land prior to such relocation.
6. PREEMPTION.—A settlement and survey by a preëmptor under the laws prior to such relocation, appropriates the land, and has priority in right to such relocation.

7. PREEMPTION LAWS.—The actual settler and occupant of the soil has always been regarded with peculiar favor, both by the Legislature and the courts. Statutes giving preëmptions and laws for the protection of actual occupants have always been construed liberally in favor of such preëmptor and occupant.

8. PREEMPTOR MAY APPLY A LAND CERTIFICATE.—A preëmptor having settled upon and designated for a homestead a tract of public land, may apply to his preëmption survey a land certificate, and obtain patent, without losing his priority of right in the land by his settlement and occupancy, as against one locating subsequent to his settlement as preëmptor.

9. RULES OF COMMISSIONER OF LAND OFFICE.—In the absence of statute regulations, rules prescribed by the Commissioner of the Land Office, and by which claimants are guided in obtaining patents, are entitled to the highest consideration,—if, indeed, they are not to have conclusive effect.

APPEAL from Wise. Tried below before the Hon. J. A. Carroll.

July 27, 1874, John Eldridge brought an action of trespass to try title in the usual form, in the District Court of Clay county, against Foster Johnson, for 160 acres of land, described in the petition. The defendant pleaded not guilty. At a subsequent term, the parties amended, setting up the facts constituting their respective titles.

The county-seat of Clay county was located on the land in controversy, the county claiming under the defendant.

December 6, 1875, the plaintiff filed a motion for change of venue, supported by affidavit of three disinterested parties, on account of alleged prejudice against the claim of plaintiff.

December 7, an agreement of parties was filed, consenting that the venue be changed to Wise county. On the agreement, an order was made changing the venue to the District Court of Wise county.

October 3, 1876, the cause was tried without a jury, and judgment rendered for Eldridge, the plaintiff, for the land. Johnson appealed.

The opinion contains a full statement of the case.

*Welch, Piner & Austin,* for appellant.

I. The venue was improperly changed. (Const. of 1869, art. 5, sec. 9; Rogers v. Watrous, 8 Tex., 64; Bryan v. Sundberg, 5 Tex., 424; 7 Tex., 76; 11 Tex., 144; 20 Tex., 370; 21 Tex., 736.)

II. Questions as to jurisdiction may be raised at any time. (Evans v. Pigg, 28 Tex., 590; Sutherland v. De Leon, 1 Tex., 250; Burleson v. Henderson, 4 Tex., 49; Wood v. Smith, 11 Tex., 368; 22 Tex., 626.)

III. Abandonment of location. (McMillan v. Warner, 38 Tex., 410; McGimpsey v. Ramsdale, 3 Tex., 344; Hollingsworth v. Holshousen, 17 Tex., 41; Johns v. Pace, 26 Tex., 270.)

IV. The testimony as to opinions of the Commissioner of the General Land Office was irrelevant. (4 Bouv. Jur., 160; 2 Bouv. Law Dict., 202; 1 Story's Eq. Jur., 100, 102; Bilbie v. Lumley, 2 East, 469; Hunt v. Rousmanier's Administrator, 8 Wheat., (S. C.,) 174; 1 Peters' Supp., ch. 13–17; Stone v. Hale, 18 Ala., 561; 4 Bouv. Inst., 160; Will. Eq. Jur., 59, *et seq.;* Champlin v. Laytin, 18 Wend., 414; Broom's Legal Maxims, 197; 1 Story's Eq. Jur., 110, *et seq.;* Adams' Eq., 168, and note; Lowndes v. Chisholm, 2 McCord's Ch., 455; Gilbert v. Gilbert, 9 Barb., 534; Mellish v. Robertson, 25 Vt., 603; Middleton v. Croft, 1 Stran., 1056; East India Co. v. Tritton, 3 B. & C., 280.)

V. The location made by Albert Eldridge in 1869, by virtue of certificate number 30,508, conferred no title on him or his assignee, because at the time of such location the land had already been appropriated by the application of the D. C. Barrett certificate, number 1,333, which was still a valid subsisting location in 1869.

The D. C. Barrett certificate was located upon a tract of land, including survey numbers one and two made for Eldridge, under the fifth section of the act of 10th of February, 1852, entitled "an act concerning surveys of land." (Paschal's Dig., art. 4566.) A careful review of the various land

laws prior to this act, discloses the fact that the return of the certificate or other evidence of title to the General Land Office within a specified time was not considered or made a prerequisite to the validity of this location. Indeed, this was the first act which prescribed the time within which a survey should be made; and until its passage no diligence, in the absence of abandonment, was necessary. (Wyllie *v.* Wynne, 26 Tex., 45.)

The only condition prescribed by the fifth section of this act, is that the field-notes should be returned to the General Land Office within twelve months from the date of survey. This requirement was complied with, the field-notes of the Barrett survey having been filed in the General Land Office on the 9th day of October, 1859. Unless there is some intervening law rendering the return of the certificate essential, it is manifest that on the first day of September, 1869, the location of the Barrett certificate was still a valid location, and the land covered by it was not subject to the appropriation of Albert Eldridge. But it was insisted in the court below, by the appellee, that the first section of the act of August 30, 1856, (Paschal's Dig., art. 4573,) required the surveyor to return the certificate in every instance. It is doubtful whether this is a fair construction of that section, or, rather, that part of it which precedes the "proviso," and especially is this true when it is construed with reference to the act of November 29, 1871, (Acts of 1871, 2d Sess.,) which we believe to be the first law requiring the deposit of land certificates in the land office within any particular time. But be that as it may, it is very evident that neither the seventeenth section of the act of 1837, hereinbefore referred to, nor the "proviso" of the above section, rendered even an entry or application necessary, and certainly neither ever required the return of the certificate. Every man is supposed to know his rights and the law regulating them; and if a return of the certificate is necessary under the first part of section 1 of the act of 1856, it is very presumable that Barrett's administrator

pursued the mode of appropriating land pointed out by the act of 1837 and the aforesaid "proviso," which exempted him from making such return.

If, then, there was no law prior to the act of 1871 which forfeited Barrett's location, it follows that Eldridge's certificate, number 30,508, was located in 1869 on land which did not constitute a portion of the "vacant, unappropriated public domain," and hence that such location was null and void *ab initio.*

Admitting, however, that the act of 1852, or at any rate the act of 1856 before recited, rendered the return of Barrett's certificate necessary,—no particular time is fixed by law for such return, unless the period specified for the return of the field-notes should by analogy be held as the limit. However this may be, there is nothing in any of the acts which requires the certificate to be returned before the field-notes. It is unquestionably true that Barrett's administrator had twelve months from the 1st day of September, 1859, within which time to return such certificate. The act of November 2, 1866, entitled "an act to extend the time for renewing files of land certificates, making surveys, and return of field-notes," extended the time for returning such field-notes, and consequently the certificate, until the 1st day of January, 1868. (Paschal's Dig., arts. 8075, 7086.)

Afterwards, by the act of November 29, 1871, (Paschal's Dig., arts. 7089, 7096–7098,) the return of the Barrett certificate within eight months from the time of its passage was rendered necessary, under penalty of forfeiture of location and survey.

We submit, that this last act revived in every respect the location made by D. C. Barrett in 1859. If, then, the location of D. C. Barrett was a valid and subsisting location in 1872, what became of the location made by Eldridge in 1869?

The various acts providing for the appropriation of the public domain, either by certificate or preëmption, evidently contemplate that the land to be located shall be "vacant, un-

appropriated public domain," and we cannot think that the land attempted to be covered by the Eldridge certificate in 1869 comes properly within that category. It has been held that the location of a certificate upon vacant land severs it from the public domain, and that the location of another certificate upon the same land conferred no right upon the holder of the latter; but, on the contrary, the last location was null and void. (Hollingsworth *v.* Holshousen, 17 Tex., 50; 26 Tex., 334; 20 Tex., 513.)

We are inclined to the opinion that the location made by Eldridge in 1869, was made upon land not subject to such location, and which conferred no title, nor raised any equities in his favor.

Under our construction of the act of 1871, which we have already referred this court to, the Barrett location became forfeited, by the non-return of the certificate to the General Land Office, on the 29th day of July, 1872, which left the land formerly covered by it subject to appropriation.

Appellant Johnson was an actual settler on a part of the land surveyed under the Barrett certificate, and which is now claimed by Eldridge, as early as March, 1873, and while no application for a survey was made until a subsequent day, yet the land by actual settlement became severed from the vacant public domain, and was not subject to Eldridge's file or location in May, 1873; hence it follows, as a necessary sequence, that Eldridge has no title, either legal or equitable, to the land claimed by defendant Johnson; and as the plaintiff must recover on the strength of his own title, and not on the weakness of the defendant's, we contend that the court erred in giving judgment for the plaintiff.

By the location in 1869, the T. and N. O. R. R. certificate, number 30,508, under which Eldridge's claims, became forfeited.

VI. It has been claimed by the appellee, that the location made by Albert Eldridge in 1869 was in conflict with the D. C. Barrett location, because of the want of correct maps,

or proper connection of surveys. But, on the contrary, it has been contended by plaintiff Eldridge that the Barrett location was forfeited in 1860, and the land subject to his entry in 1869; or, in any event, if the Barrett location was not forfeited, that the survey of 1869 was void only as against those claiming in privity with Barrett; from which we infer, although Eldridge did not know just in what manner his title might accrue, that he was willing to speculate upon the chances of Barrett's location being declared forfeited. It has ever been the policy of our State government to prevent, so far as possible, a conflict of locations and the accompanying complications necessarily incident. It has also been its object to prevent speculation by the "lariating of land." And proceeding upon the hypothesis that "an ounce of prevention is worth a pound of cure," the Legislature of the State of Texas, on the 30th day of August, 1856, passed an act compelling any person making an entry by certificate on land which appeared to be appropriated, deeded, or patented by the books of the proper surveyor's office or records of the County Court or General Land Office, to abide the same, and in addition thereto forfeited the certificate. (Paschal's Dig., 4574, 4675.)

Subsequent to the passage of this act, the Constitution of 1869 was adopted.

We contend that section 3 of article 10 of that document, in recognizing the former policy of the government, divested Eldridge of any claim against the State of Texas by virtue of his ownership of T. and N. O. R. R. certificate, number 30,508.

But should the court deem the certificate not forfeited by either the act of 1856 or the Constitution of 1869, certainly these provisions are inoperative, or the location at least is null and void.

*W. O. Davis*, for appellee, contends—
1. That his location of April 8, 1869, was, when made, and

has always been, a valid location as against all persons except D. C. Barrett.

2. That the withdrawal of the certificate from the land office, in order to comply with the ruling of the Commissioner, did not work a forfeiture of the location of April 8, 1869.

3. That appellee's location of the 19th of May, 1873, was a valid location, and gives a better right than appellant's preemption claim, or his patent by virtue of the McKinney & Williams certificate.

I. The D. C. Barrett certificate should have been returned to the land office within twelve months from the 1st of September, 1859. (Paschal's Dig., arts. 4566, 4573.) The statute required the field-notes to be returned within twelve months, and it provided that the certificate should be returned with the field-notes. The certificate was thus required to be returned within the same time as the field-notes. The statute, it is true, does not expressly say that the failure to return the certificate within twelve months renders the location absolutely void. I think, however, that such result would follow as a necessary consequence. In order to acquire title to any portion of the public domain, Barrett would have to do everything the law required of him. To arrive at a proper construction of the law, we must look at the mischief which it was the purpose of the Legislature to redress, and then give the act such interpretation as will cure the evil designed to be corrected. Under the old law, a practice had obtained among locators of holding different parcels of land by virtue of the same certificate, and by means of fraudulent and fictitious certificates, for an indefinite time, to the prejudice of holders of valid claims. To prevent this, the statute required every location to be accompanied by the evidence of the right by virtue of which it was made; and this evidence was required to accompany the field-notes to the land office, thus enabling any person, at all times, to see by virtue of what right the location was made. To hold that a failure to comply with the statutes did not forfeit the location, would be to

hold that the act is a dead-letter, and for all practical purposes leave the law in the same condition as before its enactment. Thus the statutes would be rendered a meaningless collection of words, signifying nothing. If Barrett's failure to comply with the law forfeited his location, his survey was void on the 8th of April, 1869, the time of appellee's first file. There are no relief acts which kept Barrett's right alive up to that time. Appellee was entitled to a patent upon his location of that date. (Paschal's Dig., art. 7089.) In the lower court, appellant relied upon the act of November 29, 1871, (Paschal's Dig., art. 7096, *et seq.*,) for the position that appellee's location of April 8, 1869, was absolutely void for all purposes, because it was made prior to the 29th of July, 1872; or, in other words, that any file made after the date of Barrett's location on the 1st of September, 1859, and before the 29th of July, 1872, was a nullity, for all purposes, and as to all persons. The statute will not admit of any such construction. Such construction would render the statute retrospective and unconstitutional. The statute, when construed most favorably for appellant, is nothing more than a relief act for the benefit of Barrett. As appellee's claim had not ripened into a patent, it seems that the Legislature could lawfully revive Barrett's claim, and postpone appellee's location to it, according to the rule laid down in the preëmption cases. (Jennings v. DeCordova, 20 Tex., 514.) The Legislature could go thus far, but no farther. It could not render an act lawful at the time it was done, unlawful; and could not render an act valid when performed, invalid for all purposes. The relief act was intended to benefit Barrett, and not for the benefit of any other person. Barrett never saw proper to avail himself of it, but located his certificate elsewhere. Appellee's file was made upon vacant public domain, and was valid when made. Admit that the Legislature manifested an intention to postpone his file, provided Barrett desired to have it postponed. Barrett desired nothing of the kind, as subsequent events have shown, and never availed himself of the

conditional relief granted him.   A subsequent locator should
not be heard to plead an act that was not intended to benefit
him, but to benefit another who has never seen proper to
avail himself of the relief granted.

II. If I am correct in my views of the law as stated above,
appellee can hold the land by virtue of his location of April
8, 1869, unless he forfeited the same by withdrawing his cer-
tificate from the land office for relocation about the middle
of March, 1873.   (Paschal's Dig., art. 7096.)   To arrive at a
proper construction of this act, we will again be compelled to
look at the old law, the mischief or defect in it, and the rem-
edy provided by the Legislature; and we must look, further,
to the reason and spirit of the law.   As before stated, the act
of August 30, 1856, (Paschal's Dig., art. 4573,) was intended
to prevent the owners of certificates from locking up from
location more of the public domain than their certificates
called for, and to prevent the location of land by means of
fraudulent and fictitious certificates.   That act provided that
the certificate should be filed with the surveyor and returned
to the land office with the field-notes, but did not expressly
say that the certificate should remain in the land office when
filed.   Under this statute, a new class of abuses arose.   After
certificates were returned to the land office, they were with-
drawn, and not left on file for the inspection of future locators.
The act of November 29, 1871, was intended to correct these
new abuses; its purpose was to prevent the withdrawal of
certificates from the land office for improper purposes, and
was intended to benefit the future locator who should find in
the land office no evidence of the right by virtue of which
the location was made.   The Legislature could not have in-
tended that every taking of the certificate from the land
office rendered the location void.   If so, the Commissioner
could not take the certificate out of the office to examine it
by a better light.   If a stranger should carry it away by mis-
take, the survey would be forfeited.   The same result would
follow if the certificate should be carried across the street to

have it examined by an attorney. All of these cases are within the letter, but not within the reason and spirit of the statute. This shows that the act should have a reasonable construction, and that we should look to the circumstance under which the certificate was withdrawn, the object in withdrawing it, and the consequences which resulted to third persons because of its withdrawal. As appellee did not intend to use the certificate for an improper purpose, and did not intend to abandon his location, but, out of abundant caution and in order to strengthen his right, withdrew the certificate in order to refile it upon the same land, he is not within the mischief intended to be redressed. As appellant was not misled by the fact that the certificate was withdrawn, but had squatted upon the land, a naked trespasser, prior to the withdrawal of the certificate, he is not within the reason of the law, and should not be heard to plead it.

III. Appellee's location of May 19, 1873, being prior in time, gives a better right than appellant's title by virtue of the McKinney & Williams certificate. (Booth *v.* Upshur, 26 Tex., 65, 73.) In order for appellant to have any right superior to said last location, he must have some title good against the State and good against the world, that dates back prior to May 19, 1873. The patent title by virtue of the McKinney & Williams certificate had its inception long subsequent to that time. It follows that appellant must rely upon and sustain his preëmption, in order to show any right superior to appellee's last file, even if his first file should be forfeited. A person may have as many titles as he sees proper, but each title must be complete in itself. There is no rule of addition known to the law by which one good title can be made out of a given number of bad ones. If the appellant has abandoned or lost his preëmption right, he cannot tack this abandoned claim to his patent title, in order to antedate appellee. This was sought to be done in Booth *v.* Upshur, cited above, but the court held that such a thing could not be. If appellant has lost his preëmption, Booth *v.* Up-

shur is directly in point, and conclusive of the case. The evidence, I think, shows an abandonment of the preëmption beyond question.

IV. The authorities relied upon by appellant in support of his position, that a file upon land previously located is absolutely void, are Hollingsworth v. Holshousen, 17 Tex., 50; Woods v. Durett, 28 Tex., 435; and Patrick v. Nance, 26 Tex., 298. In the first of these cases, a defendant sought to use a location by one John Scott as an outstanding title. There was no proof that Scott's location had ever been forfeited or abandoned. The question under consideration was not, therefore, raised or adjudicated. In the last two cases, the land was reserved from general location, and entries thereon were expressly forbidden by law, and the question under consideration was not decided in either of them. No good reason can be shown for holding that an entry upon an older entry is absolutely void. If the junior entry is postponed so as to protect the elder right, no one is injured, and the law should go no further. The older claim, when abandoned, no longer constitutes an outstanding title. No good, but much mischief, will result from the doctrine, if strangers are allowed to defeat titles, not because any one else has a better right, but because some other person who has seen proper to lose and forfeit it once had a better right. The holder of the elder right is the only person interested. When he has lost his right he can no longer assert it, and strangers should not be allowed to assert a claim which no longer has any legal standing. The rulings of the land office are not binding upon the court. I have never understood them as being a part of the law of the land. If they are a part of our land laws, they should be published, in the shape of land-office reports, in order that the profession and courts may conform to them without unreasonable inconvenience. The only case in which the question has ever come directly before the Supreme Court, that I am aware of, is Booth v. Upshur, cited above. In that case, the

decision was directly contrary to the rulings of the land office. (See, also, Teel *v.* Huffman, 21 Tex., 782.)

MOORE, ASSOCIATE JUSTICE.—The land which is the subject-matter of this suit is a part of a survey of 13,366,038 square varas, made on the 1st of September, 1859, by virtue of a certificate for one league and labor of land granted by the District Court of Brazoria county, on the 8th of October, 1857, to D. C. Barrett, the field-notes of which were returned to and filed in the General Land Office on October 11, 1859. The certificate itself, however, was not returned to said office until some time in the year 1874. On the 8th of April, 1869, Albert Eldridge, appellee's vendor, made a location and survey of the land by virtue of a certificate for six hundred and forty acres of land, number 30,508, issued to the Texas and New Orleans Railroad Company. The field-notes of survey number 1, thus made, together with said certificate, were also filed in the General Land Office on April 1, 1870; the field-notes of survey number 2, which the holder of the certificate was required by law to have made for the State, having been filed in said office June 8, 1869. In March, 1873, appellee— to whom certificate number 30,508, and the right, title, and interest in the land to which he was or might be entitled by its location and survey as aforesaid having been conveyed by said Albert Eldridge—withdrew said certificate from the General Land Office, for the purpose of having it relocated upon the land appropriated, as he insists, by the former survey; this action being necessitated, as he alleges, by reason of the construction given by the Commissioner to the several statutes regulating the location and survey of certificates and their return to the General Land Office,—to the effect that the land in question was not subject to location and survey on said certificate number 30,508, in 1869, because of its previous survey under the certificate granted to Barrett; that notwithstanding the failure of the owner of said certificate to have the same returned to the General Land Office before

that date, said survey made by virtue of this certificate was
a valid and subsisting appropriation of said land until the
29th day of July, 1872; and that no right or interest in
said land was or could be acquired by a survey of it prior to
its forfeiture at that day. Having, on account of this ruling
of the Commissioner, and solely, as he insists, for the purpose
of having it relocated and surveyed upon the same land, in
order to perfect his title and obtain a patent, withdrawn said
certificate, appellee caused the land to be resurveyed May 10,
1873, and the field-notes and certificate to be again returned
to and filed in the General Land Office June 6, 1873.

Before this last survey, however, appellant claims to have
gone into possession and actual occupancy of that part of it
in controversy in this suit, as a preëmption settler, under the
provisions of the act to regulate the disposal of the public lands
of the State, approved August 12, 1870; and on the 6th of
August, 1873, he caused the 160 acres claimed by him to be
surveyed by virtue of his said preëmption claim; and on
the 21st of the same month the field-notes of said survey were
returned to and filed in the General Land Office. Appellant
also, as he alleges, without in any way abandoning his right
to the land, as a preëmption settler, on the 11th of April,
1874, caused said land to be surveyed for him by virtue of
certificate number 19,233, granted by the State to McKinney
& Williams. Said last certificate, together with the field-
notes of said survey, having been returned to the General
Land Office, a patent thereon was duly and regularly issued
to appellee June 23, 1874.

It will be seen from this statement of the nature and origin
of their respective claims, that appellee was not entitled to a
judgment against appellant, who, unquestionably, has the ap-
parent legal title, unless he has shown that he has a prior and
superior equitable right to it. Unquestionably, it is a familiar
and well-established rule in the courts of this State, that a
prior, valid, and subsisting location and survey will prevail
over a subsequent location and patent. But certainly the

patent carries with it, at least, a *prima-facie* right to the land
thereby granted by the State to the patentee; and to rebut
this presumption, it devolves upon the adverse claimant to
clearly establish a prior or superior equitable right; for if
both parties have equities, unless there is a decided prepon-
derance between them, the legal title must turn the scale,
taking for granted that it was not obtained through fraud or
against equity.

Let us see, then, whether appellee's supposed prior and
better equitable right to the land warrants his recovery of it
from appellant, notwithstanding his patent.

Counsel for appellee claim, and the court below seems to
have agreed with him in this view of the case, that appellee
acquired, and still has, an equitable title to the land by virtue
of the survey in 1869, which should prevail over appellant's
preëmption claim and patent. This proposition is maintained
upon two grounds: First. That the Barrett survey had been
forfeited before the location and survey for Eldridge, appel-
lee's vendor, in 1869, by the failure of the owner of the Bar-
rett certificate to return it, with the field-notes of the survey,
to the General Land Office, and that by reason thereof the
land became vacant, and was, long before that sale, subject to
relocation and appropriation by any one holding a valid cer-
tificate. Second. Though the Barrett survey was not for-
feited by the failure to return the certificate with the field-
notes to the General Land Office, and though said survey
continued to operate as a valid and subsisting appropriation
of the land covered by it until the 29th of July, 1872, yet as
the failure to return said certificate, as required by the act of
November 29, 1871, unquestionably worked a forfeiture of
it at that time, (as the location and survey in 1869 claimed by
appellee was not absolutely void, but merely relatively so, as
against the Barrett survey and those claiming under or in vir-
tue of it,) the Eldridge survey should be regarded, as against
all other parties, as a valid appropriation of the land from its
date; that after the forfeiture on July 29, 1872, of the Bar-

rett survey, there was no longer any valid or legal objection why a patent should not have been granted upon the survey made in 1869 by virtue of the certificate claimed by appellee.

But if we were to concede that both of these propositions are correct, (as to which we need at present express no opinion,) we cannot agree that the conclusion sought to be drawn is a necessary or correct deduction from the predicate. Grant that appellee may have been entitled to a patent for the land by virtue of his survey in 1869, on the forfeiture of the Barrett survey, July 29, 1872, or even at an earlier date, if such is the fact, and that the contrary conclusion of the Commissioner is altogether erroneous, still this does not change the legal effect of appellee's withdrawal of the certificate from the General Land Office. It is the clear intendment of the act of November 29, 1871, to which reference has been previously made, that no certificate which had been theretofore returned· to said office, should be withdrawn from the office, unless it had not been fully located, without an abandonment of the location and survey previously made upon it. (Paschal's Dig., arts. 7095, 7096, 7097.) The opinion of the Commissioner or the owner, or their purpose and intention in the withdrawal of the certificate, cannot alter or affect the result which the statute declares shall follow from the fact of its withdrawal. If appellee's survey was prior to his withdrawal of the certificate, a valid appropriation of the land covered by it could only continue while he suffered it to remain in the office. He chose, however, to accept or acquiesce in the construction given to the law by the Commissioner, which was, in effect, that he had acquired no equitable title in the land by this survey, to be lost or abandoned by his withdrawal of the certificate for relocation upon this or any other land; and if he wished to appropriate this particular land, it was absolutely essential for him to have it located before some one else should do so. When, therefore, appellee withdrew the certificate, he elected to take his chance to secure the

land by locating it before any one else should do so, rather than to risk holding it under the survey and certificate already in the General Land Office against any one who might attempt another location of it. Having made his election, he must stand the hazard of his choice.

Appellant selected, located, and was occupying the land as a preëmption settler previous to its resurvey for appellee, on the 10th of May, 1873, and had it surveyed and the field-notes returned to the General Land Office within the time required by law. Had he gone on and obtained his patent as a preëmption settler, unquestionably he would have had not only the legal title, but the older and superior equitable right. Did he lose the equitable right acquired by his previous selection and occupancy of the land as a preëmption settler, by his subsequently locating a certificate upon it, and having it patented thereby at an earlier day than he would have been entitled to a patent on his preëmption claim? Though not without difficulty, and with some hesitation as to the correctness of the conclusion at which we have arrived, we are of the opinion that he did not.

We are led to this conclusion, somewhat at least, from the fact that the actual settler and occupant of the soil has always been regarded with peculiar favor, both by the Legislature and the courts. Statutes giving preëmptions, and laws for the protection of actual occupants, have always been construed most liberally in favor of such preëmptors and occupants. Every intendment which could be reasonably made has been generally indulged for their protection against parties seeking to oust or dispossess them, especially where such occupancy or possession has been acquired and held in good faith. In view of the uniform current of previous decisions of the court on this and kindred questions, we do not think we should, merely because we cannot in all instances appreciate the force of the reasons given in their support, or may doubt whether in all cases the conclusions reached have been the result of strictly logical deductions from sound princi-

ples, overturn what seems to have been heretofore regarded as the settled policy of the law, or make a radical departure from the well-recognized general course of the previous decisions of the court.

It may be also noted, that the Commissioner of the General Land Office testifies that it is customary to allow a preëmptor, when he desires it, to apply a certificate to his preëmption claim, when to do so works no injury or wrong to other parties. It is not seen that a mere change in the certificate upon which a patent is asked can injuriously affect third parties, provided the one first located is valid. Nor do we see that the fact of the preëmptor's willingness to furnish the government with a certificate, instead of his getting his patent without doing so, is a matter of which a party who has wrongfully filed upon the land, after its selection, location, and occupancy by the preëmptor, can justly complain; or that this fact should give his survey—made after the appropriation of the land by the preëmptor—such superiority as to overcome the legal title which the preëmptor has been permitted, under the recognized and established rules which are observed and followed in the General Land Office, to receive for the land which he has previously settled and occupied for a homestead; and which the bounty of the government authorized him to designate and select from any part of the public domain to which the rights of other parties had not attached previous to his occupancy of it. While, as has been previously said, the mere opinion or conclusion of the Commissioner as to the result of a particular act will not relieve a party from the consequence of such act, when plainly declared by law, still it is not to be denied that rules which are prescribed by him, and by which claimants are guided in getting patents, in the absence of direct statutory regulations, are entitled to the highest consideration,—if, indeed, they are not to have conclusive effect. We think it cannot be denied that appellant's equitable title is not inferior to appellee's; and with the legal

title vested in him by the patent, the scale, if otherwise balanced, must turn in his favor.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.