W. C. SNIDER v. INTERNATIONAL AND GREAT NORTHERN RAIL-
ROAD CO. ET AL.

1. PRESUMPTION—SURVEY.—It will be presumed, in the absence of evi-
dence to the contrary, that a survey properly certified by the officer
authorized to make it, and which is stated in his recorded field-notes
as having been made by virtue of a certificate, the grantee of which
is mentioned, was made for the grantee of the certificate.

2. SURVEY—CERTIFICATE.—When the official records of a county sur-
veyor show that there were surveys of two different tracts of land
under the same headright certificate, made on the same day, the
entries of which were made one immediately following the other,
connected by the language in which they were referred to, and the
name of the surveyor, with his official title, appears to one, but his
name only, without his official title, appears to the other, the omis-
sion will not be regarded as material.

3. FORFEITURE OF SURVEY—QUÆRE.—Whether the unexplained dis-
appearance of field-notes of a survey from the general land office
would, under a statute denouncing a forfeiture of rights upon their
disappearance and a failure to return them, have such effect upon one
who had acquired a right under them, and had no knowledge of or
agency in their disappearance?

4. CONSTITUTIONAL LAW—SURVEYS.—The act of November 29, 1871,
entitled "An act supplemental to an act in relation to the survey and
return of genuine land certificates, passed April 25, 1871," was not
violative of sections 17 and 18 of the Constitution of 1869.

5. LOCATIONS—FORFEITURE.—The first article of the act of November
29, 1871, was intended to operate on locations and surveys under
certificates made subsequent to the passage of that law, requiring
the certificate to be returned with the field-notes within twelve
months, and forbidding its withdrawal afterwards under penalty of
forfeiture of the location and survey, unless withdrawn for the pur-
pose of locating an unlocated balance.

6. LOCATION—SURVEY—STATUTE CONSTRUED.—The act of November
29, 1871, relating to the survey and return of land certificates, neither

revived nor amended the act of April 25, 1871, entitled "An act in reference to the location, survey, and return of genuine land certificates." The legislation in each act operated upon different states of fact and conditions.

7. LAND CERTIFICATES—SURVEY.—An individual holding an unlocated certificate on the 25th of April, 1871, could not have been compelled by force of law to locate it at any particular period between that time and the 1st of January, 1875; but if he did locate it, it came under the operation of existing laws and the control of the Legislature, as to the time for its survey after location, and for the return of field-notes after survey. It was equally within the power of the Legislature to prescribe a time for the return of the certificate and to declare that a failure to return worked a forfeiture of the survey.

8. CONSTITUTIONAL LAW.—The act of November 29, 1871, which provided for the return of all certificates to the general land office within a time specified, is constitutional. Its provisions support the propriety of its title as being supplemental to the act of April, 1871.

9. CASE APPROVED.—Johnson v. Eldridge, 49 Tex., 522, approved.

APPEAL from Harrison. Tried below before the Hon. A. J. Booty.

This suit was brought on December 19, A. D. 1874, by William C. Snider against the International and Great Northern Railroad Company, the Texas Pacific Railroad Company, Andrew Taylor, the town of Longview, and about two hundred other defendants. The action was originally in trespass to try title to a tract of land embraced in survey number 445 of the land surveys of Upshur county, afterwards in Gilmer county, and embracing the town of Longview.

By amended petition, on February 6, 1879, the plaintiff alleged that the defendants claimed to be possessors in good faith and to have made improvements, as a basis for which they claim title under a pretended patent illegally and fraudulently issued by Jacob Keuchler, when he was commissioner of the land office, and an illegal survey made under and by virtue of the headright certificate of Hamilton McNutt; that said survey was made on February 28, 1838, and the field-notes sent to the land office; that the field-notes were defective (1) because they did not show by authority of what certificate the survey was made, and (2) they were not examined and

approved by the district surveyor; that as far back as 1858 the McNutt certificate and field-notes were out of file and absent from the general land office, and remained absent until April 6, 1871; that the certificate never was returned; that no effort was made to supply the lost papers until August 7, 1872; that the land therefore became public domain; that on August 7, 1872, George Lane, as the owner of a valid certificate issued to Seth Sheldon, as the assignee of J. M. Arocha, filed on the land in controversy, had the survey of the same made August 9, 1872, and filed in the general land office on August 14, 1872; that in April, 1871, J. M. Glasco, who falsely pretended to be deputy surveyor of Upshur county, caused to be filed in the general land office what purported to be a copy of the original field-notes of the McNutt survey covering the land, certified to by him as a true copy of the original field-notes on file in his office; that Glasco was not at the time a deputy surveyor, and if he was, could not have acted, being interested in the land; and that the pretended copy filed by Glasco was not a true copy, because, among other reasons, the original field-notes were not certified to by Richard Hooper, county surveyor, but simply "Richard Hooper."

The petition further sets forth that when the original McNutt survey was made the land was in Shelby county, and the survey there recorded; that it was afterwards cut off from Shelby county and formed a part of Harrison county; that still later it was cut off from Harrison and made a part of Upshur county, and still later it became a part of Gregg county; that the record of the survey of Upshur county is a copy of the survey of Harrison county, which is a copy of the original survey in Shelby county; that there was no affidavit of the loss or destruction of the original field-notes, and no copy from Shelby county before filing of the pretended copy of the field-notes by Glasco; that from 1853 to September 3, 1872, the McNutt certificate was absent from the general land office, and during all that time no effort was made by any one interested to obtain the same or a duplicate; that on September 3, 1872,

Keuchler, the commissioner, without authority of law, issued to Hamilton McNutt what purported to be a duplicate of the Hamilton McNutt certificate, without application by any authorized person; that it was filed with the field-notes, and on the next day, September 4, 1872, he issued a patent thereon; that no advertisement had been made and filed of the loss of the original, nor affidavit of its loss, and no notice made and published that a duplicate would be applied for; wherefore he charged that the patent was illegal and void.

Petitioner also averred that he owned whatever title George Lane acquired by his file and survey, &c., of that portion of the Arocha certificate located on the land in controversy; that in 1853 one John Thorn, who claimed to be the owner of an interest in the McNutt certificate, withdrew it from the land office and retained it until 1876, when he delivered it to one Sam Cundiff, one of the defendants.

The amended petition closed with a prayer for judgment for the land and for cancellation of the patent.

On May 22, 1878, plaintiff filed a trial amendment, in which the larger portion of the allegations already made were incorporated. Attached to it as exhibits were certified copies of the various files, surveys, field-notes, &c., of the conflicting surveys referred to in the pleading.

On May 22, 1879, the court sustained a demurrer to plaintiff's trial amendment, and one as to the original petition and amended petition. From this judgment plaintiff appealed.

Two errors were assigned, viz., (1) in sustaining demurrer to original and amended petitions, and (2) in sustaining demurrer to the trial amendment of plaintiff.

*T. J. Campbell, McKay & Mabry*, and *Turner & Lipscomb*, for appellant.

I. Assuming that the land in controversy was vacant at the date of appellant's file, we maintain that the amended pleadings of appellant show a complete title in himself, viz.:

1st. The Arocha certificate issued to Seth Sheldon was genuine and valid.

2d. Full and complete chain of title from said Sheldon to George Lane to said certificate, and conveyance of same by Lane to appellant.

3d. That George Lane caused the land in controversy to be appropriated by virtue of said certificate; that the same was regularly located on said land, a survey made, and the field-notes duly returned to the general land office about the 7th of August, 1872. This is sufficient pleading of title to support an action of trespass to try title. (Paschal's Dig., art. 5303.)

II. The pretended location and survey of the land in controversy by virtue of the Hamilton McNutt certificate, made June 2, 1838, were null and void. It is not shown by virtue of what certificate said location and survey were made, nor for whom the same were made.

III. If the location and survey referred to in proposition 2 shall be held to be valid, then we maintain that the said location and survey were afterwards forfeited and became void. The field-notes of said location and survey were never examined by the county surveyor of Shelby county, nor was there any official certificate by said county surveyor as to the correctness of said field-notes, as required by law. (Paschal's Dig., art. 4543; Lewis *v.* Durst, 10 Tex., 417; Williams *v.* Craig, 10 Tex., 438.)

IV. The field-notes of the said location and survey, as described in proposition 2, were not returned to the general land office before the 31st day of August, 1853, and therefore the land became vacant and subject to relocation. (Paschal's Dig., art. 4562.)

V. The field-notes referred to in propositions 3 and 4 were never in fact, if properly returned and lost or destroyed, reproduced as required by law. (Paschal's Dig., art. 4552.)

VI. The said location and survey by virtue of the said Hamilton McNutt certificate, as referred to in proposition 2, became and was null and void by reason of the withdrawal of said cer-

tificate from the general land office by John Thorn, as averred by appellant. (Paschal's Dig., art. 7096.)

VII. The said location and survey, as referred to in proposition 2, became and was null and void because the Hamilton McNutt certificate aforesaid was not on file in the general land office on the 29th day of November, 1871, nor had been withdrawn for location of unlocated balance thereof; nor was the same returned to and filed in the general land office within eight months from said date. (Paschal's Dig., art. 7097.)

VIII. The pretended patent issued upon the Hamilton McNutt certificate was and is void. The said certificate was not in the land office on the 4th day of September, 1872, the date of said patent; nor was any duplicate thereof procured as required by law. See allegations of appellant. (Paschal's Dig., arts. 4123, 4124, 4126, 2127.)

*Turner & Lipscomb* filed an elaborate and able separate argument, the great length of which precludes insertion. They argued, that, to construe an amendment, reference should always be had to the original act to give it effect; that it often happens, that only by reference to the original act can the terms of the amendment be understood; that the act of November 29, 1871, (discussed in the opinion,) is within itself a perfect statute, dependent on no former act to give it validity, and requiring no reference to former acts to explain its meaning; that if the act of April 25, 1871, were repealed, the repeal would not affect the act of November 29; that it was not, properly speaking, an amendatory act,—citing Chambers *v.* The State, 25 Tex., 307; People *v.* Mahaney, 13 Mich., 497; 41 Ala., 9; 47 Mo., 29; 17 Wis., 631; 2 Oregon, 69; 33 Ind., 507; 21 Mich., 236; 5 Ind., 327; 28 Ind., 382; 4 La. Ann., 297; 46 Ala., 340; 33 Mich., 385; 3 Oregon, 282. They also discussed the other questions involved in the opinion.

*F. B. Sexton, William Steadman,* and *Jones & Henry,* for appellees.

I. Assuming that the land in controversy was vacant when

appellant's certificate was located on it, there being no allega-
tion in plaintiff's pleadings that said certificate had ever been
approved or recommended as genuine by the tribunals consti-
tuted for that purpose, its location was not a legal appropria-
tion of the land.

The only allegations relating to this proposition are to be
found in plaintiff's amended petition, where the allegation is
a "valid land certificate," and in his trial amendment the alle-
gation is "a valid land certificate of the first class, said certifi-
cate having been examined and approved according to law,
and recognized as a valid certificate in the land office." (Pas-
chal's Dig., arts. 1110, 4537; Mims *v.* Mitchell, 1 Tex., 447;
Sneed *v.* Moodie, 24 Tex., 160; Wells *v.* Fairbanks, 5 Tex.,
584; Hughes *v.* Lane, 6 Tex., 289; Wright *v.* McKenney, 34
Tex., 570; Bedwell *v.* Thompson, 25 Tex. Supp., 251; Milburn
*v.* Walker, 11 Tex., 329; Peck *v.* Moody, 23 Tex., 94.)

Appellant's second proposition is, that the pretended survey
and location of the land in controversy by virtue of the Ham-
ilton McNutt certificate, made June 2, 1838, were null and void.

II. Appellant insists that "it is not shown by virtue of what
certificate the survey was made, nor for whom it was made."
We contest this statement, and say that it is shown by plain-
tiff's petition that the survey was made for Hamilton McNutt
by virtue of the Hamilton McNutt headright certificate.

III. We contest the statement of appellant under his third
proposition, and say plaintiff's petition shows that the field-
notes were certified to by said surveyor as required by law.

IV. Appellant makes no statement to sustain his fourth
proposition, and there is nothing in the record to sustain it.
On the contrary, the only allegation on this point is found
in plaintiff's amended petition, and is in these words, viz.:
"The survey by virtue of the McNutt certificate was made
on the land in controversy on or about the 28th of February,
1838, and the field-notes sent up to the general land office."
And in his trial amendment, in which he makes the follow-
ing allegation in regard to the return of said field-notes, to

wit: "A survey of the land in dispute was made by virtue of the H. McNutt certificate on the 28th of February, 1838, and the field-notes, improperly made out and certified, were duly returned to the general land office." The certificate and field-notes referred to here as improperly made out are made part of this pleading, and are in proper form.

V. The Hamilton McNutt certificate having been located on the land, and having been surveyed and the field-notes duly returned to the land office and subsequently lost or destroyed, no informality in returning a copy of the field-notes could divest or in any manner impair the equitable title to the land thus acquired.

VI. There is no law in force in this State by which the withdrawal and failure to return said certificate to the land office make said location null. (Paschal's Dig., art. 7088.)

1st. If there is any law in force in this State by which a withdrawal and failure to return a certificate to the land office work a forfeiture of a location and survey, such forfeiture results only when such withdrawal and failure to return are the acts of the owner of the certificate, or of some person acting by authority of the owner. (Paschal's Dig., arts. 7096, 7097.)

2d. There is no allegation in plaintiff's pleadings that John Thorn owned any interest in or had any authority over the Hamilton McNutt certificate, or that he was the agent of any person having such interest or authority. (Chit. on Pl., 237; Steph. on Pl., 378.)

VII. Plaintiff having set out his own and defendants' titles, and alleging that defendants' is the older, must show that his own is good, and that defendants' is defective, or fail to disclose a good cause of action.

1st. Plaintiff's action is trespass to try title. He sets out both his own and the source of defendants' title, and shows defendants' to be older than his own, but suggests it is null for the reasons presented in his foregoing propositions.

2d. The H. McNutt certificate having been once duly filed

in the land office, was not forfeited under the act approved November 29, 1871, because said act is unconstitutional. (Const. 1869, secs. 17, 18.)

3d. If the act of November 29, 1871, is constitutional, still the mere fact that said certificate was not at·that date on file in the land office, and was not placed there in eight months from that date, did not forfeit the location and survey, because that result could only be produced by a voluntary withdrawal of the certificate by the owner, or by the owner's consent or authority, and by its being in the power of the owner to return it, and his failure to do so either negligently or willfully. (Paschal's Dig., art. 7097.)

4th. If defendants' location and survey are valid and in force, their title is not affected by any irregularity in the issuance of the patent. (Paschal's Dig., art. 5303.)

Hightower, Special Judge.*—On December 19, 1874, appellant instituted suit in trespass to try title against appellees in the District Court of Gregg county, for the recovery of a tract of land situated in said county and described in his petition. At the January Term, 1877, of said court appellant amended his pleadings and set out fully and specifically the facts which he averred and upon which he relied as showing and constituting his title to the land sued for, and also set out fully and· specifically what he alleged were the facts upon which the title or claim of defendants to the land rested.

At the same term the case was removed, upon motion of appellant, from Gregg to Harrison county for trial, and at the Spring Term, 1878, of the District Court of Harrison county the case was tried upon the general demurrer of defendants to appellant's pleadings. The demurrer was sustained. A trial amendment was immediately filed by appellant, and judgment again rendered against him upon general demurrer, which judgment was final, and to which action of the court upon the

---

*Chief Justice Moore and Associate Justice Bonner being disqualified, Hightower and W. W. Morris were appointed to sit in their stead.

demurrer appellant excepted, and brought the case, by appeal, to this court for revision upon the questions arising on the demurrer.

The briefs and argument of counsel have tendered to our consideration, perhaps, every material issue of law and fact arising upon appellant's statement of the facts of the opposing claims of the parties. We do not think that the rights or interests of the litigants, nor our duty, under the nature and circumstances of the case, require at our hands at this time a settlement of these issues to that extent, and shall therefore confine our action principally to the consideration of some of the prominent issues presented, a disposition of which will give the case that direction it seems to require.

Appellant claims title to the land under and by virtue of a file made thereon on August 7, 1872, and a survey thereunder on August 9, 1872, under and by virtue of a valid and genuine land certificate of the first class issued to Seth Sheldon, assignee of J. M. Arocha, which certificate, he alleges, had been examined and approved and recognized as valid in the general land office. He further avers that said file and survey were made for George Lane, the then legal and equitable owner of said certificate, and that the field-notes of said survey, duly certified, were, together with said Arocha certificate, returned to the general land office and filed therein according to law on August 14, 1872; that he is the legal and equitable owner of that portion of said certificate located upon the land sued for, together with the land, by virtue of a regular transfer thereof from said Lane to him, and that Lane held the same by regular chain of transfer from Arocha.

He avers that defendants claim title under a survey of said land made under the Hamilton McNutt headright certificate on February 28, 1838, the field-notes of which survey were duly returned to the general land office.

From this point the burden of appellant's pleadings seems to be to attempt to destroy, by averment, whatever of right may have attached in favor of defendants to the land by virtue

of the alleged location and survey thereof under said McNutt certificate; and to this end are the propositions in his brief and arguments mainly directed, in substance as follows:

"Proposition 2: The location and survey of the Hamilton McNutt certificate were null and void, because it is not shown by virtue of what certificate nor for whom the same were made.

"Proposition 3: If valid, then the same was afterwards forfeited. The field-notes of the same were never examined by the county surveyor of Shelby county, nor was there any official certificate by said county surveyor as to the correctness of said field-notes, as required by law.

"Proposition 5: The field-notes of the McNutt survey were, as far back as the year 1853, out of file and missing from the general land office at Austin, and from that time up to April 6, 1871, they were not returned to the general land office."

Under this proposition we are referred to the averments of the transcript of plaintiff's petition, stating that in April, 1871, one J. M. Glasco, falsely pretending to be a county surveyor of Upshur county, made out and caused to be filed in the general land office on April 6, 1871, what purported to be a copy of the original field-notes of the McNutt survey, covering the land in controversy, but which, it is averred, was not a copy, and further alleging that said Glasco was not a deputy surveyor, and was at the time claiming a large part of the land under the McNutt survey.

"Proposition 6: Said location and survey by virtue of said Hamilton McNutt certificate became null and void by reason of the withdrawal of said certificate from the general land office by John Thorn in 1853, as averred in the transcript.

"Proposition 7: It became null and void because said certificate was not on file in the general land office on November 29, 1871, nor had been withdrawn for location of unlocated balance, nor was the same returned to and filed in the general land office within eight months from said date.

"Proposition 8: The pretended patent issued upon the Ham-

ilton McNutt certificate was null and void. 'The said certificate was not in the land office on September 4, 1872, the date of said patent, nor was any duplicate thereof procured, as required by law."

Were we to confine ourselves to the consideration of only those things affirmed in the propositions of appellant, we should certainly experience considerable difficulty in some of them in coming to a conclusion upon the premises they lay down, so meagre is the statement, and have therefore had to yield to the invitation extended in several of them to look to the transcript for that which, under proper observance of the rules, would have been in the propositions or statements themselves.

It can hardly be said that appellant's conclusion, expressed in his second proposition, can be maintained by that to which we must look for the evidence in considering it. It is expressly averred, more than once, in his pleadings, that the survey was made by virtue of the Hamilton McNutt certificate, and is so stated in the certified transcript of the field-notes of said survey from Shelby county, made part of appellant's amended petition, and stated therein to be a transcript of the original record of original field-notes from the office of the surveyor of Shelby county, of which the territory in which the land sued for is embraced then formed a part. In the absence of evidence to the contrary, it will be presumed that the survey was made for the grantee of the certificate.

Upon appellant's third proposition, reference is made to the transcript of his pleadings, which contains, as already noticed, what is averred by him to be a certified transcript of the original record of the H. McNutt field-notes from the surveyor's office of Shelby county, where the only informality pointed out or apparent seems to be the failure of the county surveyor to annex his official title to his name in signing his examination and approval of the field-notes; and inasmuch as it appears thereon that there were surveys of two different tracts of land under the same headright on the same day, the entry of the field-notes of which seems immediately to have followed each other

and be connected by the language, to one of which the name of the surveyor, with his official title, appears, it is not conceived that a mere omission to annex his official title to his name would destroy or impair an otherwise valid instrument.

There is an alleged disappearance of the McNutt field-notes from the general land office about A. D. 1853, and an allegation that they were never returned to that office, nor were they ever supplied in the manner required by law. It does not appear whether they were withdrawn, and if so, by whom, or were mislaid, or destroyed, accidentally or otherwise, or whether any party having an interest in them knew of their absence from the land office. It is further alleged that on the 6th of April, 1871, J. M. Glasco, falsely pretending to be a deputy surveyor of Upshur county, filed in the general land office what purported to be a certified copy of said field-notes taken from the records of the surveyor's office of Upshur county; that said Glasco was interested in the land in suit covered by the McNutt survey; that the alleged copy made by him was not taken from the records of the surveyor's office of the county where the survey was made, to wit, Shelby county, and was not a true copy of said field-notes; and that no affidavit of the loss of the original field-notes was ever made.

It is shown that when the survey of the McNutt location was made, in 1838, upon the land in suit, it then was part of Shelby county. Subsequently it was embraced in what became Harrison county, and upon the creation of Upshur county it was embraced in Upshur, and afterwards and now is part of Gregg county. Transcripts of the original record of the field-notes were transferred to the land records in the surveyor's office of each of the counties of which said land successively became part. We are not aware of any positive rule of law working a forfeiture of previously-acquired rights upon the state of facts thus presented. It is believed that the act of February 10, 1852, (Paschal's Dig., art. 4562,) were the first statutory provisions regulating the return of field-notes, the provisions of

which do not seem applicable to the state of facts here presented; and it seems to be a question of doubt as to whether the unexplained disappearance of field-notes from the land office would, under a statute working a forfeiture of rights upon their disappearance and a failure to return them, have such effect upon one who had acquired a right under them, and had no knowledge of or agency in their disappearance.

Appellant's petition and exhibits attached purport to furnish a certified copy of the McNutt field-notes from Shelby county, and also the alleged copy filed by Glasco in the general land office April 6, 1871. From these evidences it appears that the Glasco copy was a true copy of the description of the land as contained in the true and original field-notes. True, he had added some words aiding the original heading, apparently to more fully identify the certificate with the field-notes and survey; but it seems they were substantially the field-notes of the McNutt survey, embracing the land in controversy, and were so recognized and acted upon by the commissioner of the general land office. Whether this was a return in fact, if not in law, of those field-notes, and whether such return would or would not in a case of this character be a return of field-notes in a legal sense, even without the affidavit of loss, are questions not conceived necessary to be now decided; neither do we wish to be understood as expressing an opinion as to the effect of a disappearance of the field-notes as heretofore discussed.

Appellant's sixth, seventh, and eighth propositions substantially affirm, in support of his assignment of error in the action of the court below in sustaining the demurrer to his pleadings, that it was therein shown that in 1853 one John Thorn, claiming an undivided interest in said McNutt certificate, did, by permission of the commissioner of the general land office, withdraw it from the general land office, and that it was never after returned to said land office until after said Lane had filed on said land and caused the same to be surveyed under the Arocha certificate, and caused the field-notes thereof to be returned to the general land office of Texas; that it was not

in the land office on the 29th day of November, 1871, nor was it returned to and filed in the general land office within eight months from said date, nor had the same been withdrawn for the purpose of locating an unlocated balance thereof, nor had any duplicate of said certificate been procured and filed therein as required by law, at any time; that from the year 1853 on up to the 7th day of August, 1872, and several years thereafter, said certificate remained out of the land office and in possession of said Thorn, and that neither Thorn nor any person interested in the McNutt survey, from 1853 to August 7, 1872, the date of Lane's file, made any effort to return said certificate to the land office, nor to procure and file a duplicate thereof, or ever caused to be returned to the general land office said McNutt certificate or any duplicate thereof, under the terms of the act of November 29, 1871, and that the same was never returned to said land office and filed under the provisions of said act of November 29, 1871, or any other law of Texas, and that, therefore, said McNutt location and survey became null and void.

One of the appellees' counter-propositions to appellant's sixth, seventh, and eighth propositions, is to the effect that "the McNutt certificate, having been once duly filed in the land office, was not forfeited under the act approved 29th of November, 1871, because said act is unconstitutional," and in support of this proposition he refers to sections 17 and 18 of the Constitution of 1869. Those sections are as follows:

"SEC. 17. Every law enacted by the Legislature shall embrace but one object, and that shall be expressed in the title.

"SEC. 18. No law shall be revised or amended by reference to its title; but in such cases the act revised or section amended shall be reënacted and published at length."

The title of the act of November 29, 1871, is: "An act supplemental to an act in relation to the survey and return of genuine land certificates, passed April 25, 1871."

There has been a general disposition to construe liberally constitutional provisions restricting or directing the action of Legislatures, rather than to embarrass legislation by a

construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which they were adopted. It is not thought that the validity of the act in question is affected by section 17 of the Constitution referred to. There is but one object expressed in the title, viz., to supplement, to add to the act of April 25, 1871, being an act in relation to the location and return of genuine land certificates. Under this title it would very naturally and readily occur to the mind, that the body of the act would contain legislation additional to that of the act of April 25, 1871, on the subject of the location, survey, and return of genuine land certificates. If this be so, it cannot be said that the act is contrary to the constitutional provision cited. In the absence of oral or written argument from appellees, we are not expressly informed as to their views—as to the manner in which they propose to apply section 18 of the Constitution referred to in support of their proposition—as to the unconstitutional character of the act under consideration—and are therefore left to assume that their views are, that said act is amendatory of the act of April 25, and that the latter act should therefore have been reënacted and published at length in the act of November 29. The general understanding and definition of "amend," is to change, to alter, to correct, or to reform. Are the two acts in question independent of each other? Or does the one change, alter, correct, or reform the other?

The act of April 25, 1871, is entitled "An act in reference to the location, survey, and return of genuine land certificates." Article 7088 provides: "No rights held by any individual or corporation by virtue of a genuine land certificate shall be considered forfeited by reason of its failure to have been located, surveyed, or returned since the 2d day of March, 1861, under any laws heretofore passed limiting the time for such location and survey, and the time for the location, survey, and return to the general land office of all such certificates shall be extended to the 1st day of January, 1875."

The above quotation suffices to furnish all of said act neces-
21

sary to be considered upon this point. The first object of the act, or of the portion quoted, in its legislation upon the general subject expressed in the title, is to rescue from forfeiture any rights held by individuals or by corporations "by virtue of a genuine land certificate," by reason of its failure to have been located, or surveyed, or returned since the 2d day of March, 1861, under any laws previously passed limiting the time for such location or survey; to extend the same indulgence to those rights which was extended to other rights upon which the laws of limitation would have operated to their destruction, in the memorable period which lay between the points of time mentioned, by a suspension of limitation during the interval named. The succeeding part of that portion of the act quoted seems intended to be, as in fact it almost literally is, a legislative annunciation of section 4 of article 10 of the Constitution of 1869, then in force, which reads thus: "All unsatisfied genuine land certificates now in existence shall be surveyed and returned to the general land office by the 1st day of January, 1875, or be forever barred." By the Constitution certainly, and apparently by the clause of the act referred to, it seems to be designed to fix the 1st of January, 1875, as the utmost limit of indulgence to parties holding genuine certificates in withholding them from location. The holders of unlocated certificates were given until that date to have such certificates, with proper survey and field-notes thereunder, filed in the general land office.

The first article in the act of November 29, 1871, was intended to operate upon locations and surveys under certificates made subsequent to the passage of the law requiring the certificate to be returned, with the field-notes, within the time required by law for the return of field-notes, (twelve months,) and forbidding its withdrawal afterwards under penalty of annulment of the location and survey, unless withdrawn for the purpose of locating an unlocated balance.

The first clause of the second article of the act requires all certificates, the field-notes of surveys under which, previously

made, have been returned to the general land office, and the certificate by virtue of which such survey was made is not on file, or withdrawn for location of an unlocated balance, to be returned and filed in the land office within eight months from the passage of the act, under penalty of such survey becoming null and void. The second clause of the act requires the field-notes of previous surveys, which have never been returned, to be returned, accompanied by the certificate, within the time prescribed by law, or the location and survey shall be void.

The third article requires the field-notes of previous surveys, which have been withdrawn from the office, to be returned within twelve months after the passage of the act, or the survey shall be void. It also requires field-notes thereafter withdrawn from the office to be returned within twelve months from date of withdrawal, or the survey shall become void. Under the construction given to the act of April 25, it does not seem that the act of November 29, 1871, either revises or amends it. The points of legislation embraced in each distinctively, seem to operate upon different states of facts and conditions. True, they legislate upon the same subject-matter, ("with reference to the location, survey, and return of genuine land certificates,") but upon distinct phases of the general subject. The nearest approach to unity of particular subject, condition, and purpose, in the two acts, appears to be in their provisions as to the time for return of certificates to the general land office. That provision in the earliest act has been construed to be a general announcement of a period by which all locations and surveys must have been made, and the field-notes thereof, with the certificates by virtue of which they were made, should have been filed in the land office at Austin.

It is not conceived that it was the intention of the Legislature, by this general provision, to repeal all previous laws by which it had previously directed, controlled, and limited the steps of the claimant under certificate of the public domain; to extend the time for making a survey under a headright location from the passage of the act of April, 1871, to a period

near the 1st of January, 1875; nor, in effect, to say to the holder of such certificate that he could withhold the field-notes of a survey made thereunder on the 26th day of April, 1871, to the 1st of January, 1875; nor that he, who had long previous thereto lost a right acquired by survey by his laches and failure to have his field-notes returned, had his right not only revived, but a period of years given in which to return his field-notes. Judging by contemporaneous enactments, both constitutional and legislative, it seemed to be the policy of the State and her endeavor not to relax the force of her former laws, but to augment it, in so far as it operated to compelling prompt action in the assertion and maturing of the claims of individuals upon the public domain held by virtue of certificates. An individual holding an unlocated certificate on the 25th of April, 1871, could not have been compelled by force of law to have located it at any particular period between that time and the 1st of January, 1875; but when he did locate it, then it would have come under the operation of existing laws and the control of the Legislature as to the time for its survey after location, and that time in which the law required the field-notes to be returned after survey. Equal control, it is thought, the Legislature would have had over the time for the return of the certificate, to the extent at least to declare a failure to return it a forfeiture of the survey made under it.

An examination of the provisions of the act of November, 1871, supports the propriety of its title as being supplemental to the act of April, 1871. The latter act had, by its first article, if it had any practical operation at all, relieved all parties who had, since March 2, 1861, acquired rights under certificates by location or survey, from the penalties of failure to survey upon location, or to return field-notes upon survey. By the effect of the act, such rights had been fully restored; but the act contained no provision bringing them within the operation of any law of limitation upon their future action. Existing laws of direction and limitation did not apply probably to their anomalous condition, or to the novel facts of their case. Hence

the apparent propriety and necessity of the provisions of the act of November, which seem to be clearly supplemental to, and not amendatory of, that of the previous April. We conclude that the act of November 29, 1871, is constitutional. We are not aware that it has been made the subject of judicial construction by this court upon a state of facts similar to those presented in this case, but in the case of Johnson v. Eldridge, 49 Tex., 522, it has decided, in effect, that the withdrawal, by the owner, of a certificate from the general land office therein previously filed, is, in a legal view, under said act, an abandonment of the survey previously made thereon. From a consideration of all the averments of appellant's pleadings, we are of opinion that they disclose, *prima facie*, a cause of action, and that the court below erred in sustaining appellant's demurrer thereto; for which the judgment of said court is reversed, and this cause remanded for further proceedings.

REVERSED AND REMANDED.

## On motion for rehearing.

W. W. Morris, Special Judge.—After a consideration of the grounds of this application and argument by appellees' counsel, we are still of the opinion that the appellant's pleadings set out a legal cause of action. The averments of the validity of the Arocha certificate, under which appellant claims title, are, we think, substantially in the terms employed in the statute defining legal land certificates, and are deemed sufficient under which evidence may be adduced. Whether fraud, mistake, or accident, or other wrong, unaccompanied by acts of negligence or vice on the part of those claiming under the McNutt certificate, would avoid the forfeiture denounced by the statute, we do not deem it proper now to decide, in passing on questions of pleadings merely, in the absence of facts or argument of counsel for appellant touching the point in question. We therefore leave the question open for consideration in the court below in the further progress of this cause.

The constitutionality of the supplementary act of the 29th of November, 1871, to that of the 25th of April, 1871, has been earnestly pressed on our attention by the counsel for the appellees, on the ground that the former act is amendatory of, and not supplemental to, the latter. We still entertain the conviction that the act of the 29th of November, 1871, may well stand as a supplement to the act of the 25th of April, 1871.

Judicial tribunals ought not to annul a legislative enactment because of a conflict with the Constitution, except on a clear and well-founded conviction that such conflict does exist.

We think that the object of the supplemental act of the 29th of November, 1871, is sufficiently expressed in its title.

The motion for a rehearing is overruled.

MOTION OVERRULED.

[Opinion delivered November 25, 1879.]